**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 19-cv-1574-WJM-NYW

EMC MORTGAGE LLC,

      Plaintiff,

v.

PULTE MORTGAGE LLC,

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND**
**MOTION FOR A MORE DEFINITE STATEMENT**

---

This matter is before the Court on Defendant Pulte Mortgage LLC's ("Pulte's")

Motion to Dismiss the Complaint and Motion for More Definite Statement (the "Motion").

(ECF No. 6.)  For the reasons that follow, the Motion is denied.

## I. BACKGROUND

### A. Plaintiff's Allegations

On May 1, 2019, Plaintiff EMC Mortgage LLC ("EMC") filed a Complaint against

Pulte in Colorado state court (ECF No. 2), seeking to enforce Pulte's alleged

contractual obligation to indemnify EMC for losses resulting from defective mortgage

loans that Pulte originated and sold to EMC between 2004 and 2007 (*id.* ¶ 1).  Pulte

removed the action to this Court on May 31, 2019.  (ECF No. 1.)  EMC's allegations,

which the Court accepts as true for purposes of the Motion, are as follows:

Between 2004 and 2007, Pulte sold thousands of mortgage loans to EMC under

a written agreement (the "Agreement")  that consists of (1) a mortgage loan purchase

agreement dated November 1, 2003 (the "MLPA"), and 2) "an accompanying seller

guide, as amended from time to time, that was incorporated into the terms of the MLPA"

(the "Seller Guide").  (ECF No. 2 ¶ 2)

The Agreement includes over 50 representations and warranties ("R&Ws") made

by Pulte regarding the quality, risk, and manner and process of origination of the loans.

The Agreement "obligated Pulte to indemnify EMC for any losses that EMC might suffer

as a result of actual or alleged breaches of those R&Ws."  (*Id.* ¶ 3.)  For example, Pulte

represented to EMC in the Agreement "that the property securing each loan had been

appraised by a qualified appraiser in compliance with specified standards and

requirements."  (*Id.* ¶ 3.)

As contemplated by the parties at the time the Agreement was executed, "EMC

subsequently pooled [the loans it purchased from Pulte] with other loans and

transferred them to third-party securitization trusts that issued residential mortgage

backed securities" ("RMBS").  (*Id.* ¶ 4.)  EMC sold approximately 10,800 of the loans

that it purchased from Pulte into 65 securitization trusts that issued RMBS between

2005 and 2007.  (*Id.* ¶ 4.)  The approximately 10,800 loans EMC purchased from Pulte

and subsequently transferred to the 65 securitization trusts, are referred to in the

Complaint as the "Pulte Loans" or "Loans," a convention the Court will adopt for

purposes of this Order (*Id.* ¶ 4.)  The 65 securitization trusts into which the Pulte Loans

were sold will hereinafter be referred to as the "Pulte Trusts" or "Trusts."

In connection with EMC's transfer of the Loans into the Trusts, EMC made

R&Ws about the Loans to the relevant Trusts based on the R&Ws Pulte had made to

EMC about the Loans.  (*Id.* ¶ 5.)  "In each case, the R&Ws that EMC made about the Pulte Loans to the Pulte Trusts were substantively identical to or more limited than the R&Ws that Pulte made to EMC about the same Pulte Loans."  (*Id.* ¶ 5.)  In other words, if a Loan breached a R&W that EMC made about that Loan to a Trust, the Loan necessarily breached a R&W that Pulte made to EMC that covered that same Loan, thereby obligating Pulte to indemnify EMC for any loss that EMC might incur as a result.  (*Id.* ¶ 5.)

In late 2007, the residential-mortgage industry collapsed.  (*Id.* ¶ 6.)  As a result of the high volume of defaulting loans, RMBS trusts began to suffer significant losses.  (*Id.* ¶ 6.)  "Collectively, the Pulte Trusts have experienced losses totaling approximately $15 billion, of which approximately $350 million was generated by defaulting Pulte Loans."  (*Id.* ¶ 6.)  Pulte Trusts and others with economic interests in the performance of the Trusts consequently asserted claims against EMC, alleging that the Trusts' losses resulted from breaches of EMC's R&Ws as to the Loans EMC had sold into the Trusts.  (*Id.* ¶ 7.)

Between February 2014 and December 2017, EMC paid over $1 billion to settle claims asserted by and on behalf of dozens of Pulte Trusts.  (*Id.* ¶ 9.)  EMC subsequently demanded that Pulte indemnify it for the portion of the losses that EMC suffered in connection with that settlement, and several other settlements that were attributable to Pulte Loans.  (*Id.* ¶ 9.)  Pulte to date has refused to comply with EMC's demand for indemnification.  (*Id.* ¶ 9.)

**B.     Defendant's Motion**

On June 7, 2019, Pulte filed the instant Motion.  (ECF No. 6.)  Pulte seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, a more definite statement pursuant to Rule 12(e).  (*Id.* at 1.)

Pulte first argues that dismissal under Rule 12(b)(6) is appropriate because EMC's claims are barred by the applicable statute of limitations.  (*Id.* at 6.)  This contention rests on Pulte's assertion that EMC's cause of action is a breach-of-contract claim disguised as an indemnification claim.  Pulte further contends that "the Complaint provides no factual averments or details with respect to . . . which [Pulte Loans] were allegedly in breach, which [provisions of the Agreement] were allegedly breached by each [Pulte Loan], and how each breach caused Plaintiff a loss," and seeks dismissal under Rule 12(b)(6) for this reason as well.  (*Id.* at 3.)  Alternatively, with respect to this latter contention, Pulte seeks under Rule 12(e) "a more definite statement of [EMC's] claims identifying the specific [Pulte Loans]" at issue.

On June 28, 2019, EMC filed a Memorandum of Law in Opposition to Pulte's Motion.  (ECF No. 18.)  On July 12, 2019, Pulte filed a Reply.  (ECF No. 24.)

## II.  LEGAL STANDARD

**A.     Rule 12(b)(6) Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at*

*Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

Additionally, the Court may consider a document outside the pleadings, even in a Rule 12(b)(6) analysis, if the document is (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).[1]

## B.     Rule 12(e) Motion for a More Definite Statement

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects

---

[1] EMC attached a copy of the Agreement with its Complaint. (ECF No. 2 at 20–44.) With the authenticity of that document being undisputed in this case, the Court will consider it in ruling on Pulte's Motion.

complained of and the details desired."

## III. ANALYSIS

**A.     Statute of Limitations**

Pulte argues that the applicable statutes of limitations have expired on EMC's claims.  (ECF No. 6 at 1.)  Statute of limitations questions may be resolved in a motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished."  *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

The parties agree that, under the Agreement, New York law applies to this dispute.  (ECF No. 51 at 3; ECF No. 52 at 6).  The parties also agree that, in particular, the New York "borrowing statute" must be given effect.  (ECF No. 51 at 3; ECF No. 52 at 6).  The borrowing statute provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. Civ. Prac. Law and Rules ("CPLR") § 202.

The New York Court of Appeals has stated as follows with respect to the borrowing statute: "When a nonresident sues on a cause of action accruing outside New York, [the borrowing statute] requires the cause of action to be timely under the limitations periods of both New York and the jurisdiction where the cause of action accrued."  *Global Fin. Corp. v. Triarc Corp.*, 693 N.Y.S.2d 479, 480 (1999).

6

1.    <u>The Nature of Plaintiff's Claim</u>

To determine whether EMC's claims are time-barred, the Court first must determine when EMC's claims accrued.  When the claims accrued depends on whether, as EMC argues, the claims sound in contractual indemnification, or instead, as Pulte argues, the claims sound in breach of contract.  The Court concludes that, under New York law, EMC's claims sound in contractual indemnification.

The Agreement provides in relevant part:

> SECTION 7 [of the MLPA].  <u>Remedies; Indemnification.</u>
> Seller will be in default under this Agreement upon, among other reasons, any misrepresentation or breach of warranty by Seller or the non-fulfillment or non-performance by Seller of any covenant, condition or action required of it under the Seller Guide, and Seller will be subject to any remedies available to EMC, including, but not limited to, termination of this Agreement, indemnification of EMC by Seller, and Seller's obligation to repurchase one or more of the Mortgage Loans, as more fully set forth in the Seller Guide.
>
> *  *  *
>
> **[Section] 11.03 [of the Seller Guide] – Remedies for Breach of Representations and Warranties**
>
> **11.03.01 – Repurchase**
>
> *  *  *
>
> **11.03.2 – Indemnity**
>
> In addition to such cure and repurchase obligation, the Seller shall indemnify EMC and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the

representations and warranties contained in this Chapter [ ]. In addition to the obligations of [Pulte] set forth in this Section [ ], EMC may pursue any and all remedies otherwise available at law or in equity, including, but not limited to, the right to seek damages.

### 11.03.3 – Causes of Action

Any cause of action against the Seller relating to or arising out of the breach of any representations and warranties made in Sections 11.01 or 11.02 shall accrue as to any Mortgage Loan or Servicing Rights upon (1) discovery of such breach by EMC or notice thereof by the Seller to EMC, (2) failure by the Seller to cure such breach or repurchase such Mortgage Loan as specified above, and (3) demand upon the Seller by EMC for compliance with the relevant provisions of the Agreement and the Seller Guide.

(ECF No. 2 at 24, 43.)

Pulte does not appear to dispute that, under New York law, a contract can give rise to a contractual indemnification claim. *See Varo, Inc. v. Alvis PLC*, 691 N.Y.S.2d 51, 55 (App. Div. 1999). Pulte argues, however, that the Agreement does not establish indemnification as a stand alone cause of action, and that the Agreement only "specifies that indemnity is one remedy among several potentially available to Plaintiff for damages resulting from Pulte's alleged breach of representations and warranties." (ECF No. 6 at 9–10.) The Court finds this argument to be unavailing. The language of the Agreement, taken with the weight of authority on this issue, establishes that the Agreement provides for a contractual indemnification cause of action.

    a.    *Interpretation of the Agreement*

Under New York law, contract interpretation is initially a matter for the court; however, ambiguous language—*i.e.*, language reasonably susceptible to more than

one interpretation—should be submitted to the trier of fact. *Syncora Guarantee Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328, 333 (S.D.N.Y. 2012). In interpreting a contract, a court should give words their plain meaning and seek to "give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Id.* (internal citations omitted).

"When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Assoc. v. AGS Computers, Inc.*, 74 N.Y.S.2d 487, 491 (1989) (citing *Levine v. Shell Oil Co.*, 28 N.Y.S.2d 205, 211 (1971); *Kurek v. Port Chester Hous. Auth.*, 18 N.Y.S.2d 405, 411 (1966)). "The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Hooper*, 74 N.Y.S.2d at 491–92.

While the Agreement does seem to denominate indemnification as a "remedy," in the Court's view, this alone does not preclude the availability of indemnification as a stand alone cause of action. Indeed, the Agreement itself contemplates that the pursuit of a legal claim against Pulte can constitute a "remedy": "In addition to the obligations of [Pulte] set forth in this Section [ ], EMC may pursue any and all *remedies* otherwise available *at law or in equity, including, but not limited to, the right to seek damages*." (ECF No. 2 at 43.) (emphasis added).

Moreover, in interpreting a contract, the Court must seek to give effect to the intention of the parties. *Syncora*, 874 F. Supp. 2d at 333. Again, the Agreement states:

> Seller shall indemnify EMC and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon *or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in [the Agreement].*

(ECF No. 2 at 43 (emphasis added).)

The fact that the above provision refers to EMC's potential losses "resulting from any claim [or] demand" made against EMC as a result of Pulte's breach of the Agreement R&Ws forecloses any reasonable argument that indemnification operates only as a "remedy." This is because, if, as Defendant argues, the limitations period began to run at the time the defective loans were sold, Plaintiff would only have been able to seek indemnification resulting from Plaintiff's payment to a third party if that third party had demanded payment, and if Plaintiff had actually made the payment, within the limitations period as calculated from the date of sale. It is difficult to find credible the notion that a sophisticated party like EMC would intentionally agree to its right to indemnification being contingent upon a *third party* seeking indemnification within the fixed limitations period that Pulte argues applies. In other words, the argument that the right to indemnification based upon payment to a third party could be extinguished at a time wholly unrelated to the time at which the demand for payment or payment was made makes no business sense in the context of this particular contract.[2]

---

[2] The Agreement expressly contemplates that the Pulte Loans would be transferred to third parties: "The Seller acknowledges that with respect to some or all of the Mortgage Loans, EMC intends to effect one or more Whole Loan Transfers and/or one or more Pass-Through Transfers." (ECF No. 2 at 44.)

b.    *Applicable Case Law*

Pulte rests much of its argument in this respect on *Lehman Brothers Holdings,*

*Inc. v. Universal American Mortgage Company, LLC*, 660 Fed. App'x 554 (10th Cir.

2016), which involved a set of facts in many respects identical to that of the instant

case.  This "appeal involve[d] fifteen residential mortgages bought by Lehman Brothers

Bank, FSB.  This bank, which later changed its name to Aurora Commercial Corp.,

conveyed five of the loans to Lehman Brothers Holdings, Inc. and retained the other

ten.  Aurora and Lehman Holdings sued, claiming that the sellers had breached

warranties about the qualities of the loans."  *Id.* at 555.

The Tenth Circuit, applying the New York borrowing statute, affirmed the

judgments of the district courts, holding that the plaintiffs' claims were time-barred.  *Id.*

at 556.  As here, whether the claims were time-barred turned in part on whether, as a

matter of New York law, the claims sounded in breach-of-contract or in indemnification.

The court concluded that because "[the plaintiff] presented the claim in district court

solely as one for breach of contract, with indemnity as a remedy rather than a distinct

cause of action, . . . [the plaintiff] cannot avoid summary judgment by recasting its

contract claim as an indemnity claim."  *Id.* at 567.  The court, citing *Peoples' Democratic*

*Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986) ("*Yemen*"), further

explained that it "would regard [the plaintiff]'s claims as causes of action for breach of

contract even if [the plaintiff] had pleaded them as claims for indemnity."  *Id.* at 568.

*Yemen* was a similar case in which the Second Circuit, applying New York law, also

held that the plaintiff's claims were time-barred in part because they were claims for

breach of contract, not indemnification.

11

The dispute in *Yemen* centered around shipments of grain that the plaintiff had bought from the defendant. *See generally id*. For reasons not material here, the deal did not go as planned, and the plaintiff incurred "deadfreight" costs as to a third party (the shipowner) through an arbitration settlement. The Second Circuit concluded that, although "the deadfreight payment was made by [the plaintiff] to a third party, and that [the plaintiff] suffered no loss for deadfreight charges until it paid the arbitration settlement in February 1981, . . . [the plaintiff]'s deadfreight claim still amounts to nothing more than a claim for consequential damages from [the defendant]'s alleged breach of the 1974 grain sale contracts." *Id.* at 351.

The court in *Yemen* stated that "*[w]hen, as here, there is no express agreement creating a right to indemnification*, an implied right to indemnification can still be found in either of two sets of circumstances." *Id.* at 351 (emphasis added). Concluding that there was no basis for finding the plaintiff to have an implied right of indemnification against the defendant, the Second Circuit held that the claim sounded in breach of contract. *Id.* at 351.

In the italicized quotation from *Yemen* above, the Second Circuit recognized the distinction under New York law between contractual indemnification and implied indemnification claims. *See Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 126–27 (2d Cir. 2019) ("*GreenPoint*"); *Kleeberg v. Eber*, 331 F.R.D. 302, 324 (S.D.N.Y. 2019) ("Under New York law, the right to indemnification may arise out of an express agreement for indemnification, or it may be implied by law in favor of one who is held liable solely by imputation of law because of his relation to the actual wrongdoer.").

That the Tenth Circuit stated in an unpublished decision in *Lehman Brothers*, 660 Fed. App'x at 568, considered the plaintiff's claims to sound in breach of contract rather than indemnification claims does not require the same result here.  In *Lehman Brothers*, the court simply did not address whether the loan purchase agreement at issue included an indemnification provision as the Agreement does here.  The court in *Lehman Brothers*, like the court in *Yemen*, analyzed whether the plaintiff could bring an "implied" indemnification claim, stating that "[i]n an indemnity claim, the plaintiff alleges that the defendant owed a duty to a third party rather than to the plaintiff itself:"

> The gravamen of an indemnity claim is not that the defendant has breached some duty of care which it owes directly to the plaintiff, but rather that they both owe a duty to some third party and that because of defendant's negligence or wrongful conduct the plaintiff has been held legally liable and cast in damages to the third party.  It is the equitably imposed obligation which the actual wrongdoer owes to indemnify the other who has, without fault on its part, become legally liable and cast in damages to a third party by reason of that wrongdoing that is the only critical duty vis-a-vis plaintiff and defendant in an indemnity context.

*Lehman Bros.*, 660 F. App'x at 568 (quoting *City of New York v. Lead Indus. Ass'n, Inc.*, 644 N.Y.S.2d 919, 923–24 (App. Div. 1996) (per curiam)).

The above quotation cited in *Lehman Brothers* describes the nature of an implied indemnification claim, not an express or contractual indemnification claim.  *See Lead Indus. Ass'n*, 644 N.Y.S.2d at 922–26; *see also McDermott v. City of New York*, 428 N.Y.S.2d 643, 646 (1980) (describing the nature of an implied indemnification claim); *iFreedom Direct Corp. v. Lehman Bros. Holdings, Inc.*, 2017 WL 3671573, at *2 (D. Utah Aug. 24, 2017) (stating that, in the Tenth Circuit's *Lehman Brothers* decision, "[b]ecause [the plaintiff] had not asserted a cause of action for express contractual

indemnification, the Tenth Circuit relied on implied [ ] indemnification principles"). What is at issue here, in contrast, is whether the Agreement creates a contractual indemnification claim. The Tenth Circuit's *Lehman Brothers* decision is thus inapposite here.

While there is a relative lack of authority on this particular legal issue, courts applying New York law have held that contractual language essentially identical to the relevant provisions of the Agreement gives rise to a contractual indemnification claim. *See Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 2014 WL 3258409 (D. Colo. July 8, 2014); *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 2014 WL 5069409 (D. Colo. Oct. 9, 2014), *vacated pursuant to settlement agreement*, (13-cv-0090-PAB-MJW, ECF No. 150); *Assured Guarantee Mun. Corp. v. DB Structured Prods., Inc.*, 927 N.Y.S.2d 880 (Sup. Ct. 2011); *In re Lehman Bros. Holdings Inc.*, 530 B.R. 601 (Bankr. S.D.N.Y. 2015); *In re RFC and RESCAP Liquidating Tr. Action*, 332 F. Supp. 3d 1101, 1190 (D. Minn. 2018).

Moreover, in *GreenPoint*, a Second Circuit case with facts very similar to those of the instant case, the parties' mortgage-loan contract stated: "[GreenPoint] agrees to indemnify [U.S. Bank] and hold it harmless from and against any and all claims, losses . . . and any other costs, fees and expenses that [U.S. Bank] may sustain" as a result of GreenPoint's breach of any representations or warranties made in the loan purchase agreement. *GreenPoint*, 916 F.3d at 126–27. But because the plaintiff (U.S. Bank) had not paid a third party for losses arising out of the defendant GreenPoint's breach of representations and warranties with respect to those loans (originally sold from

GreenPoint to U.S. Bank), the Second Circuit concluded that, under New York law, U.S. Bank could not maintain a contractual indemnification claim against GreenPoint.  *See id.* at 126.  Nevertheless, the court stated, "*Had U.S. Bank paid a [third-party] certificate holder for harms to the certificate holder stemming from GreenPoint's breach, [U.S. Bank]'s claim against GreenPoint would be for indemnity.*"  *Id.* at 126 (emphasis added).

In accordance with the analysis above, the Court concludes that EMC's claims sound in contractual indemnification.[3]

2.   Place of Accrual

Under the circumstances of this case, the borrowing statute mandates that the applicable statute of limitations of the jurisdiction in which the cause of action accrued must be given effect.  *See* CLPR § 202; *Global Fin.*, 693 N.Y.S.2d at 480.

"When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."  *Global Fin.*, 693 N.Y.S.2d at 485.  Courts applying the borrowing statute "have consistently held that a business entity's residence is determined by its principal place of business."  *Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d 491, 494 (S.D.N.Y. 2013); *see also McMahon & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 727 F. Supp. 833, 834 (S.D.N.Y. 1989) ("A corporation's principal place of business, rather than its state of incorporation,

---

[3] In the Court's view, even if EMC's claims sounded in breach of contract, the particular breaches alleged by EMC would not have occurred, and the claims therefore would not have accrued, until EMC had made payments to the relevant third parties.  In other words, contractual indemnification is a form of breach of contract (*i.e.*, breach of the indemnity clause) that accrues when the indemnitee makes payments covered by the indemnity clause to third parties.  (*See* Part III.A.3, below.)

determines its residence.").

Pulte argues that, because EMC avers in its Complaint that its principal place of business is located in Texas (ECF No. 2 ¶ 10), EMC's claims must pass muster under both the relevant New York and Texas statutes of limitations. EMC disagrees, noting that courts applying New York law have recognized a "financial base" exception to the normal economic place-of-injury rule. *Landesbank Baden-Wurttemberg v. RBS Holdings USA Inc.*, 14 F. Supp. 3d 488, 502 (S.D.N.Y. 2014) ("*Landesbank*") (citing *Lang v. Paine, Webber, Jackson & Curtis, Inc.*, 582 F. Supp. 1421, 1425–26 (S.D.N.Y. 1984); *Sack v. Low*, 478 F.2d 360 (2d Cir. 1973)). Plaintiff argues that it is unclear where its claims accrued, and therefore that, because it is unclear which State's statute of limitations applies (other than New York's), the Court should not grant Pulte's Motion on the basis that EMC's claims are time-barred. As to this issue, the Court again agrees with EMC.

In *Landesbank*, several foreign business entities sued the corporate defendant, alleging, among other things, that the defendant had committed fraud as to certain RMBS transactions. The defendant filed a motion to dismiss, grounded in part on its contention that the applicable limitations period had run on the plaintiffs' claims. The court noted that, under the normal place-of-injury test with respect to the accrual of economic injuries under the New York borrowing statute, one plaintiff's cause of action would have accrued in Germany, another's in Ireland, and another's in the Cayman Islands. *Id.* at 501–02. The defendant argued, however, that because all of the plaintiffs were owned or controlled by the German plaintiff's predecessor in interest,

16

only the relevant German statute of limitations should apply to all of the plaintiffs' claims. *Id.* at 502.

The court stated: "The Complaint is scant on details regarding the method of payment for the [RMBS] certificates; the location of accounts from which payment was made; the presence or absence of employees making investment decisions for or on behalf of the Plaintiffs in the relevant jurisdictions; and the specific ownership structures of, and financial relationships among, the Plaintiffs." *Id.* at 502. As such, the court concluded, "[f]urther development of the factual record is necessary to determine whether Germany should be considered the locus of all of Plaintiffs' injuries." *Id.* at 502; *see also Lang*, 582 F. Supp. at 1426 (similar).

EMC's Complaint similarly lacks details with respect to where their economic losses were suffered, and EMC cannot be faulted for that. A statute of limitations argument constitutes an affirmative defense, *see* Fed. R. Civ. P. 8(c), so EMC was not required to anticipatorily allege in its Complaint facts which would support that its claims were not barred by a statute of limitations, *see Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1303 (10th Cir. 2003). At this stage of the proceedings, the Court is not satisfied to any reasonable degree of certainty that EMC's claims accrued in Texas, and as such, it remains unclear which State's (other than New York's) statute of limitations applies.

3.    Time of Accrual

Contractual indemnification claims accrue when the loss is suffered by the party seeking indemnity. *Varo*, N.Y.S.2d at 55 (citing *Travelers Indem. Co. v. LLJV Corp.*,

17

N.Y.S.2d (App. Div. 1996); *see also Moscato v. City of New York (Parks Dep't)*, 584 N.Y.S. 39, 40 (App. Div. 1992) (same).

Plaintiff alleges that the following losses it suffered as a result of Defendant's misrepresentations give rise to indemnification claims: (1) Plaintiff's December 2017 payment of approximately $1 billion to 58 Pulte Trusts; (2) Plaintiff's July 2015 payment of approximately $41 million to two Pulte Trusts; (3) Plaintiff's November 2015 payment of approximately $33 million to a Pulte Trust; (4) Plaintiff's August 2016 payment of approximately $105 million to three Pulte Trusts; (5) Plaintiff's January 2016 payment of approximately $995 million to Ambac Assurance Corporation; and (6) Plaintiff's February 2014 payment to Syncora Guarantee Inc. (the total amount of which is unclear). (ECF No. 2 ¶¶ 32–54.)

Plaintiff filed suit on May 1, 2019. (ECF No. 2.) Because New York's statute of limitations period for indemnification actions is six years, *see* CPLR § 213; *McDermott*, 428 N.Y.S.2d at 646, none of Plaintiff's claims are barred by the applicable New York statute of limitations. Thus, because it is not clear on the face of the Complaint that Plaintiff's claims are time barred as a result of the operation of the statute of limitations of any other State, Defendant's Motion to Dismiss on statute of limitations grounds is denied. *See Aldrich*, 627 F.2d at 1041 n.4.

**B.    Sufficiency of Plaintiff's Allegations**

1.    Rule 12(b)(6) Motion to Dismiss

Pulte also argues that because the Complaint does not identify the sales of precisely which loans constitute breaches of the Agreement, which R&W each loan at

issue breached, and the "correlation between the losses suffered by Plaintiff's investors and Pulte's loans," dismissal under Rule 12(b)(6) is warranted. (ECF No. 6 at .) In the alternative, Pulte argues, the Court should order EMC to file an amended complaint under Rule 12(e), so that EMC may correct the asserted deficiencies in its Complaint. The Court rejects these arguments.

It may be true that EMC, to prevail on its claim, will have to make "loan-level" evidentiary showings of Pulte's breaches of the Agreement. However, the Court notes the Agreement states that Pulte must indemnify EMC for losses "grounded upon or resulting from a breach *or alleged breach* of any of the representations and warranties contained in [the Agreement]." (ECF No. 2 at 43 (emphasis added).) This language suggests that EMC ultimately may not be required to make loan-level showings of actual breach to prevail on its claims.

In any event, EMC alleges that it "sold approximately 10,800 of the loans that it purchased from Pulte" to the Pulte Trusts. While EMC does not allege how many of these loans the sale of which (to EMC) breached the Agreement, viewing EMC's allegations in the light most favorable to it, the Court finds it fair to infer that it was a substantial portion of the 10,800 total loans. Accordingly, Pulte's argument boils down to the proposition that EMC was required to allege, as to probably thousands of mortgage loans, which provisions of the Agreement the sales of at-issue loans breached, and precisely how the sales of those loans gave rise to EMC's liability to third parties. In support of this argument, Pulte points to one case, *Lehman Brothers Holdings Inc. v. Universal American Mortgage Company, LLC*, 2013 WL 169997 (S.D. Fla. Jan. 3, 2013). In that case, the court dismissed without prejudice seven of eight

breach-of-contract claims brought in one action, with each claim based on a single loan. The court stated as follows:

> The lack of commonality among the various factual circumstances pertinent to each of the eight individual loans makes them all but impossible to be adjudicated together. That lack of commonality flows from, among other things, the fact that each of these loans was made at a different time, to different borrowers, in different locations involving different purchases of different real properties; most fundamentally, each loan requires separate proof as to whether a breach occurred, what damages, if any, flowed from any such breach, and what the amounts of any such damages are.

*Id.* at *1.

The court further stated that the "[p]laintiff, if it so chooses, may re-file each of its seven dismissed claims . . . , with one loan to be the subject of each separate complaint." *Id.* at *1.

The Court does not find this case to be supportive of Pulte's argument. As an initial matter, the Florida case involved only eight loans. The case at bar involves over ten thousand. While it may have been sensible to insist that each of eight loans be filed in separate actions, it plainly would be absurd here to require EMC to file thousands of separate actions with respect to each allegedly defective loan.

Second, the Florida district court did not address the sufficiency of the plaintiff's allegations; instead, it dismissed seven of the claims on the basis that it would not be judicially manageable to adjudicate them together. Pulte argues that the allegations in the Complaint themselves are deficient—not that the Court should dismiss this action on the basis of judicial unmanageability. Even had Pulte made this argument, the Court is not convinced that the district court's reasoning in *Lehman Brothers*, 2013 WL

20

169997, was sound and indeed it concludes that that decision is an outlier.

In the Court's view, at this stage of the proceedings, requiring any more of EMC in this respect would contravene Federal Rule of Civil Procedure 8(a)(2), which provides only that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Residential Funding Co. v. Broadview Mortg. Corp.*, 2014 WL 4104819, at *5 (D. Minn. Aug. 19, 2014). Moreover, courts to address the issue have uniformly concluded that plaintiffs in RMBS litigation need not allege loan-level breaches to survive a motion to dismiss. *See Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co.*, 410 F. Supp. 3d 662, 686 (S.D.N.Y. 2019); *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016); *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 600–02 (S.D.N.Y. 2015); *Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of Am., NA*, 943 F. Supp. 2d 428, 442 (S.D.N.Y. 2013), *abrogated in part on other grounds by Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014); *Natixis Real Estate Capital Tr. 2007-HE2 v. Natixis Real Estate Holdings, LLC*, 50 N.Y.S.3d 13, 20 (App. Div. 2017); *Residential Funding*, 2014 WL 4104819, at *5.

The clear weight of authority mandates the conclusion that EMC was not required to identify in its pleadings precisely which Pulte Loans were defective. As courts have noted:

> At the pleading stage, plaintiffs cannot be required to identify breaches of representations and warranties with respect to the individual loans in the specific trusts—such information is, at this stage, . . . uniquely in the possession of

> defendants.  Rather, plaintiffs satisfy their burden where
> their allegations raise a reasonable expectation that
> discovery will reveal evidence proving their claim.

*Policemen's Annuity*, 943 F. Supp. 2d at 442.

The Court agrees: information relating to which particular loans were defective is more likely to be in the hands of Pulte—the originator of the loans at issue.  As such, at this stage of the litigation, the Court is satisfied that the Complaint is detailed enough to give Pulte a fair and adequate opportunity to conduct discovery and to prepare its defense.  Pulte's Motion to Dismiss as to the sufficiency of EMC's allegations is accordingly denied.

2.    <u>Rule 12(e) Motion for a More Definite Statement</u>

Defendant argues that, if it is not entitled to dismissal of EMC's claims on the basis of the Complaint's failure to allege loan-level breaches, it at least is entitled to an order from the Court requiring EMC to so allege in an amended complaint.  The Court disagrees.

Motions for a more definite statement "are disfavored in light of the liberal discovery provided under the federal rules."  *Emp'rs Mut. Cas. Co. V. Downey Excavation, Inc.*, 2011 WL 1335839, at *1 (D. Colo. Apr. 7, 2011).  Such relief is justified only when a pleading "is so vague or ambiguous that the [responding] party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  Rule 12(e) motions should be denied unless the "defendant[ ] can only guess as to what conduct [or] contracts an allegation refers," *Emp'rs Mut. Cas. Co.*, 2011 WL 1335839, at *1 (internal citation omitted), or the complaint is "unintelligible," *Marquez v. BNSF Ry. Co.*, 2017 WL 3190337, at *1 (D. Colo. July 27, 2017).

22

For the same reasons that the Court will not dismiss EMC's Complaint for failure to allege loan-level breaches, the Court also denies Pulte's request for a more definite statement.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that Defendant Pulte's Motion to Dismiss and Motion for a More Definite Statement (ECF No. 6) is DENIED.

Dated this 20th day of February, 2020.

BY THE COURT:

William J. Martinez
United States District Judge